UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br>    v.<br>NICK BOVIS,<br>        Defendant. | Case No. 20-cr-00204-WHO-2<br><br>**ORDER FOR IMMEDIATE RELEASE OF DEFENDANT BOVIS** |

Defendant Nick Bovis has requested that his sentence be modified because the Bureau of Prisons has put his life in danger by its inadequate medical treatment. Emergency Motion for Modification of Sentence ("Emergency Motion"), Dkt. No. 95. The government does not contest the facts as described in the Emergency Motion, which are included below. The BOP's medical treatment of Bovis is incomprehensible and very far below the standards that I expect for anyone held in custody. I am not happy to grant this request: Bovis's underlying criminal conduct was motivated by avarice and arrogance and his public corruption injured the public in a significant way. His custodial sentence was already light as a result of his cooperation against other defendants. And as the government itself acknowledged, the remedy for his medical condition appears to be relatively straightforward—get Bovis the medication he needs at the dosage he needs (and was prescribed by his treating physician) to properly treat his medical condition. But the BOP's apparent indifference to Bovis's life threatening medical issues necessitates this ORDER that he be RELEASED IMMEDIATELY.

Bovis entered a guilty plea to a violations of Honest Services and Insurance Wire Fraud, 18 U.S.C. § 1343, and I sentenced him to nine months in prison pursuant to the cooperation agreement with the government. He surrendered to the custody of the Bureau of Prisons on

1   October 10, 2024, and is serving his sentence at FCI Florence in Florence, Colorado. He has not

2   been disciplined while in custody. He is sixty-one (61) years old and has a long-standing problem

3   with high blood pressure. *See* Emergency Motion, Exh A and Presentence Investigation Report

4   dated January 4, 2024, Dkt. No. 80, p.12.

5         When Bovis surrendered to the Bureau of Prisons in October, he provided his medical

6   prescriptions to BOP staff at that time, including a prescription for 50 mg Hydrochlorothiazide.[1]

7   *Id.*, Exh. B. Hydrochlorothiazide is relatively inexpensive and available. But the BOP filled none

8   of his prescriptions as written or in alternate form. Instead, Bovis's blood pressure medication

9   was arbitrarily reduced to ¼ of the prescribed dosage. *Id*., Exh. A.

10         In December, Bovis went to the medical clinic at the FCI facility; his vitals revealed

11   "extremely high" blood pressure. *Id.* Instead of returning his medication to the levels prescribed

12   by his treating physician, the prison medical clinic prescribed Lisinopril 10 mg, a drug that works

13   differently from Hydrochlorothiazide: Lisinopril works by constricting blood vessels while

14   Hydrochlorothiazide is in a class of medications called diuretics.

15         After taking Lisinopril, Bovis began suffering from cough, dizziness, and blurred vision,

16   making sleep and work difficult. *Id*. Persistent cough is a known side effect of Lisinopril. On or

17   about January 28, 2025, Bovis became disoriented and went to the prison medical center but was

18   initially denied treatment. His symptoms worsened to the point where he was unable to speak. A

19   correctional officer recognized what he thought were stroke symptoms, and Bovis was taken to the

20   local hospital in Florence where he was told that he had suffered from a Transient Ischemic Attack

21   ("TIA").

22         Bovis was held overnight for observation and to stabilize his blood pressure. He was

23   released from the hospital back to the BOP on January 29, 2025. The hospital physician ordered

24   that the Lisinopril be discontinued, and that the Hydrochlorothiazide be increased to 25 mg. *Id.*

25   Another medication that was added was not on the BOP formulary, so he was not given it by the

26   prison medical staff. *Id.,* A.

---

[1] The remaining discussion of Bovis's medical issues is drawn largely from the Emergency Motion, with which the government did not take issue.

On or about February 15, 2025, Bovis again suffered symptoms of blurred vision, disorientation, and slurred speech. He passed out. He was taken to the hospital and was diagnosed as having a seizure. *Id.,* Exh. D. His February 15, 2025 medical records confirm that he is to continue with his medicines, including Hydrochlorothiazide 25 mg. *Id.*, Exh. D. The hospital added an anti-seizure medication to his list of medications. Bovis was also referred for further neurological testing.

Since being released from the hospital, Bovis has continued to suffer from disorientation, slurred speech and blurred vision. *Id.*, Exh A. A nurse at FCI Florence recommended that he see a neurologist. The nearest hospital did not have one on staff. Rudimentary testing suggested that he had another TIA rather than a seizure, but he has still not received a proper follow-up. *Id.*

Despite his medical issues, Bovis has been working regularly as a kitchen assistant for the high security portion of the Florence Prison and never missed a day other than for these medical episodes. He received no write ups. Bovis sought compassionate release from the BOP, which was denied, exhausting his administrative remedies.

In sum, Bovis is a sentenced defendant who is now suffering from extreme high blood pressure and has been refused his prescribed medication. He has subsequently suffered two TIA episodes, on January 28, 2025, and on February 15, 2025, presumably as a result of BOP's inexplicable refusal to follow his doctor's orders. The refusal of the BOP to follow a simple prescription has resulted in two serious medical incidents in the relatively brief time he has been in custody. If these issues continue, they are likely to result in brain damage or even death. As the government has indicated, Bovis's issues appear to have straightforward remedy: get the medication he needs at the dosage he needs. Government Opposition, pp. 4-5, Dkt. No. 97. Yet despite being aware of this motion and, more to the point, Bovis's condition and the deleterious impacts of the BOP's failure to address the issues, BOP has done precious little to remedy the situation.

A nine-month term should not become a life-threatening sentence. Continued detention raises constitutional concerns. The Eighth Amendment bars "cruel and unusual punishments," to include deliberate indifference to unsafe, lifethreatening conditions. *See generally, Parsons v.*

1 *Ryan,* 754 F.3d 657 (9th Cir. 2014). "That the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). "[A] remedy for unsafe conditions need not await a tragic event." *Id*. At bottom, the Eighth Amendment forbids placing a frail individual at risk of death in the absence of any danger to the community or serious risk of flight.

District courts generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 819, 826 (2010). One narrow exception to this general rule falls under 18 U.S.C. § 3582(c)(1)(A), also known as "compassionate release," which permits district courts to reduce a final sentence if the defendant presents "extraordinary and compelling reasons." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021); see also *United States v. Wright*, 46 F.4th 938, 944-45 (9th Cir. 2022) ("As compassionate release derogates from the principle of finality, it is a 'narrow' remedy, and the court's disposition of a compassionate release motion is 'discretionary, not mandatory[.]'").

In this case, Bovis has exhausted the procedural requirement to bring this motion—the BOP rejected his request for compassionate relief. Substantively, he has met the three criteria required under 18 U.S.C. § 3582(c)(1)(A). "First, the district court must determine whether 'extraordinary and compelling reasons warrant' a sentence reduction." Wright, 46 F.4th at 945 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). For the reasons described above, I find that there are extraordinary and compelling reasons. "Second, the court must evaluate whether a reduction would be 'consistent with applicable policy statements issued by the Sentencing Commission.'" Id. (emphasis in original). I find that it is in light of seriousness of his condition, the shortness of time before his release, and the inexplicable refusal of the BOP to treat him properly. "Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted 'under the particular circumstances of the case.'" Id. Again, for the reasons stated above, including his lack of danger to the public (he has not been disciplined while in custody and poses no risk of recidivism) and the outsized threat to his health in comparison with the narrowness of the remedy sought, the Section 3553(a) factors counsel in favor of compassionate release.

4

Therefore, I GRANT Bovis's request for modification of sentence. He will be released from the BOP immediately to live at his home with his wife. He shall be restricted to his home through May 24, 2025, except for religious services, medical appointments, or court-related activities approved by his probation officer. His one-year term of supervised release shall commence on May 25, 2025.

**IT IS SO ORDERED.**

Dated: March 6, 2025



William H. Orrick
United States District Judge